D-412-CV-201800007 - Tuesday, January 16, 2018

# Arthur Bustos, et. al.,

v.

# Southwestern Railroad, Inc., et. al.

## CASE DETAIL

| CASE # | CURRENT JUDGE | FILING DATE | COURT |
|--------|---------------|-------------|-------|
| D-412-CV-201800007 | Aragon, Abigail | 01/04/2018 | LAS VEGAS District |

## PARTIES TO THIS CASE

| PARTY TYPE | PARTY DESCRIPTION | PARTY # | PARTY NAME |
|------------|-------------------|---------|------------|
| D | Defendant | 1 | SOUTHWESTERN RAILROAD, INC. |
| D | Defendant | 2 | SOUTHWESTERN SHORTLINE RAILROAD COMPANY |
| D | Defendant | 3 | SOUTHWESTERN RAILCAR SERVICES, LLC |
| D | Defendant | 4 | THE WESTERN GROUP, LC |
| D | Defendant | 5 | LOPEZ ROJELIO |
| DC | Decedent | 1 | CHAIREZ DELFINA |
| P | Plaintiff | 1 | BUSTOS ARTHUR |
| | | | ATTORNEY: RICHARDS DAMON C. |
| P | Plaintiff | 2 | CHAIREZ BENITO |
| | | | ATTORNEY: RICHARDS DAMON C. |
| P | Plaintiff | 3 | CHAIREZ SERGIO |
| | | | ATTORNEY: RICHARDS DAMON C. |
| P | Plaintiff | 4 | CHAIREZ ISAAC |
| | | | ATTORNEY: RICHARDS DAMON C. |

## CIVIL COMPLAINT DETAIL

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|----------------|-----------------|------------------------|------|-----------|
| 01/04/2018 | 1 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|-----------|------------------|
| 1 | Miscellaneous |

| PARTY NAME | PARTY TYPE | PARTY # |
|------------|------------|---------|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|----------------|-----------------|------------------------|------|-----------|
| 01/04/2018 | 2 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|-----------|------------------|
| 1 | Miscellaneous |

| PARTY NAME | PARTY TYPE | PARTY # |
|------------|------------|---------|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|----------------|-----------------|------------------------|------|-----------|
| 01/04/2018 | 3 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|-----------|------------------|
| 1 | Miscellaneous |

| PARTY NAME | PARTY TYPE | PARTY # |
|------------|------------|---------|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|----------------|-----------------|------------------------|------|-----------|
| 01/04/2018 | 4 | OPN: COMPLAINT | | |

| COA SEQ # | COA DESCRIPTION |
|-----------|------------------|
| 1 | Miscellaneous |

| PARTY NAME | PARTY TYPE | PARTY # |
|------------|------------|---------|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|----------------|-----------------|------------------------|------|-----------|
| 01/04/2018 | 5 | OPN: COMPLAINT | | |

EXHIBIT

A

D-412-CV-201800007 - Tuesday, January 16, 2018

| COA SEQ # | | COA DESCRIPTION | | |
|---|---|---|---|---|
| 1 | | Miscellaneous | | |

| PARTY NAME | | PARTY TYPE | | PARTY # |
|---|---|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 01/04/2018 | 6 | OPN: COMPLAINT | | |

| COA SEQ # | | COA DESCRIPTION | | |
|---|---|---|---|---|
| 1 | | Miscellaneous | | |

| PARTY NAME | | PARTY TYPE | | PARTY # |
|---|---|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 01/04/2018 | 7 | OPN: COMPLAINT | | |

| COA SEQ # | | COA DESCRIPTION | | |
|---|---|---|---|---|
| 1 | | Miscellaneous | | |

| PARTY NAME | | PARTY TYPE | | PARTY # |
|---|---|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 01/04/2018 | 8 | OPN: COMPLAINT | | |

| COA SEQ # | | COA DESCRIPTION | | |
|---|---|---|---|---|
| 1 | | Miscellaneous | | |

| PARTY NAME | | PARTY TYPE | | PARTY # |
|---|---|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 01/04/2018 | 9 | OPN: COMPLAINT | | |

| COA SEQ # | | COA DESCRIPTION | | |
|---|---|---|---|---|
| 1 | | Miscellaneous | | |

| PARTY NAME | | PARTY TYPE | | PARTY # |
|---|---|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 01/04/2018 | 10 | OPN: COMPLAINT | | |

| COA SEQ # | | COA DESCRIPTION | | |
|---|---|---|---|---|
| 1 | | Miscellaneous | | |

| PARTY NAME | | PARTY TYPE | | PARTY # |
|---|---|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 01/04/2018 | 11 | OPN: COMPLAINT | | |

| COA SEQ # | | COA DESCRIPTION | | |
|---|---|---|---|---|
| 1 | | Wrongful Death, Non-Auto | | |

| PARTY NAME | | PARTY TYPE | | PARTY # |
|---|---|---|---|---|

| COMPLAINT DATE | COMPLAINT SEQ # | COMPLAINT DESCRIPTION | DISP | DISP DATE |
|---|---|---|---|---|
| 01/04/2018 | 12 | OPN: COMPLAINT | | |

| COA SEQ # | | COA DESCRIPTION | | |
|---|---|---|---|---|
| 1 | | Other Damages | | |

| PARTY NAME | | PARTY TYPE | | PARTY # |
|---|---|---|---|---|

## REGISTER OF ACTIONS ACTIVITY

| EVENT DATE | EVENT DESCRIPTION | EVENT RESULT | PARTY TYPE | PARTY # | AMOUNT |
|---|---|---|---|---|---|

**D-412-CV-201800007 - Tuesday, January 16, 2018**

| 01/05/2018 | | | |
| | Summons Issued Upon Rojelio Lopez; LCE | | |
| 01/05/2018 | | | |
| | Summons Issued Upon The Western Group LC; LCE | | |
| 01/05/2018 | | | |
| | Summons Issued Upon Southwestern Railcar Services; LCE | | |
| 01/05/2018 | | | |
| | Summons Issued Upon Southwestern Shortline Railroad; LCE | | |
| 01/05/2018 | | | |
| | Summons Issued Upon Southwetern Railroad; LCE | | |
| 01/04/2018 | JURY DEMAND 12 PERSON | P | 1 |
| | Demand for Jury Trial | | |
| 01/04/2018 | OPN: COMPLAINT | P | 1 |
| | Complaint for Wrongful Death | | |

## JUDGE ASSIGNMENT HISTORY

| ASSIGNMENT DATE | JUDGE NAME | SEQ # | ASSIGNMENT EVENT DESCRIPTION |
| --- | --- | --- | --- |
| 01/04/2018 | Aragon, Abigail | 1 | INITIAL ASSIGNMENT |

FILED IN
4th JUDICIAL DISTRICT COURT
1/4/2018 1:45:49 PM
LPL

STATE OF NEW MEXICO
COUNTY OF SAN MIGUEL
~~FIFTH~~ JUDICIAL DISTRICT
FOURTH

ARTHUR BUSTOS, as Personal Representative
of the Estate of DELFINA CHAIREZ, Deceased;
BENITO CHAIREZ, SERGIO CHAIREZ, and
ISAAC CHAIREZ, each individually as the Survivors
and Legal Heirs to the Estate of DELFINA CHAIREZ,

       Plaintiffs,

v.                      Cause No.   D-412-CV-2018-00007

SOUTHWESTERN RAILROAD, INC.;          Aragon, Abigail
SOUTHWESTERN SHORTLINE RAILROAD COMPANY,
SOUTHWESTERN RAILCAR SERVICES, LLC,
THE WESTERN GROUP LC; and ROJELIO LOPEZ,

       Defendants.

## COMPLAINT FOR WRONGFUL DEATH

     COME NOW Plaintiffs, through their attorneys, and for their Complaint in this matter

state the following:

## I. PARTIES

### PLAINTIFFS

    1.    Arthur Bustos is an individual and resident of San Miguel county, New Mexico

and is appointed Wrongful Death Personal Representative for the Estate of Delfina Chairez,

Deceased, in Cause Number D-412-PB-2017-00045 in the Fourth Judicial District, County of

San Miguel, State of New Mexico.

    2.    Benito Chairez is an individual and resident of Chaves County, New Mexico and

a survivor and legal heir of Delfina Chairez.

    3.    Sergio Chairez is an individual and resident of Chaves County, New Mexico and

a survivor and legal heir of Delfina Chairez.

EXHIBIT A

4.      Isaac Chairez is an individual and resident of Chaves County, New Mexico and a survivor and legal heir of Delfina Chairez.

5.      All the above identified plaintiffs will hereinafter be referred to in the singular as "Plaintiff" throughout the remainder of this document. Each reference to "Plaintiff" or allegation by "Plaintiff" shall include each of the above plaintiffs as if each plaintiff was individually referenced or each allegation was made by each plaintiff.

**DEFENDANTS**

6.      Southwestern Railroad, Inc., holds itself out to be a for-profit company based out of Carlsbad, New Mexico.  It is primarily a railroad company, operating rail track through Chaves County, New Mexico.  It has its principal place of business located at 110 E. Fox Street, Carlsbad, New Mexico 88220.  Southwestern Railroad, Inc. engages in the business of railroad operations in the State of New Mexico, owns rail lines in New Mexico and is the owner of the railroad track where this Collision occurred, the train which struck Plaintiff's vehicle, and employer of the train crew operating the train involved in this Collision.  Southwestern Railroad, Inc. should hold a certificate of authority to transact business in New Mexico but apparently does not hold such a certificate; it can be served with process through its general manager at its principal place of business: John McCormick, 110 E. Fox Street, Carslbad, New Mexico 88220.

7.      Southwestern Shortline Railroad Company, LLC is a for-profit foreign company authorized, but not in good standing, to do business in New Mexico.  It is primarily a railroad company, operating rail track through Chaves County, New Mexico.  It may be served with process through its registered agent: Clifford K. Atkinson, 201 Third Street NW, Suite 1850, Albuquerque, NM, 87102.

8.      Southwestern Railcar Services, LLC is a for-profit domestic company authorized and engaged in the business of railroad ownership and operations in the State of New Mexico.

2

Southwestern Railcar Services, LLC is managed by Southwestern Railroad, Inc.  Southwestern

Railcar Services, LLC may be served with process through tis registered agent:  C T Corporation

System, 206 S Coronado Ave, Espanola, New Mexico, 87532.

      9.     The Western Group LC holds itself out to be a for-profit foreign limited liability

partnership based out of Ogden, Utah.  It is primarily a railroad operating company for various

shortline railroads, including the Southwestern Railroad, Inc.  It has its principal place of

business located at 3811 Airport Road, Building N-8, Ogden, Utah 84405.  The Western Group,

LC should hold a certificate of authority to transact business in New Mexico but apparently does

not hold such a certificate; it can be served with process through its designated Registered Agent:

Marni Durbano, 3662 N 700 E North Ogden, Utah 84414.

      10.    Southwestern Railroad, Inc, Southwestern Railcar Services, LLC, Southwestern

Shortline Railroad Company, LLC and The Western Group LC will hereinafter be referred to in

the singular as "Defendant Railroad" or "Defendants".  Each reference to Defendant Railroad or

Defendants shall include Southwestern Railroad, Inc., The Western Group, LC, Southwestern

Shortline Railroad Company, LLC and Southwestern Railcar Services, LLC as if each Defendant

was individually referenced and each allegation was made against each Defendant.

      11.    Rojelio Lopez was, at the time of the collision giving rise to this litigation, and

continues to be, to the knowledge of Plaintiffs, a resident of Roosevelt County, in the State of

New Mexico.  Mr. Lopez was an employee of Defendant Railroad working as the engineer on

the train involved in the Collision giving rise to this litigation.  Any reference made herein to the

"crew" or "train crew" includes the engineer Rojelio Lopez.  Mr Lopez may be served with

process at his residence: 812 Redwine Quincy, Portales, New Mexico 88130.

      12.    At all times pertinent hereto, all employees of the Defendant Railroad were acting

in their individual capacity and also as agents of Defendant Railroad, within the scope of their

employment and authority, and in the furtherance of the business of Defendant Railroad. All the acts and omissions of the employees of the Defendant Railroad are imputed to their employer, who is liable for such acts and omissions, as well as rendering the individual Defendants liable in their individual capacities.

## II. JURISDICTION AND VENUE

13.     The collision giving rise to this litigation occurred within the State of New Mexico and Defendant Railroad conducts business in this State.

14.     Jurisdiction is proper before this Court, as this case deals with personal injuries from a vehicle-train collision that occurred within the State of New Mexico, is the subject of New Mexico common law, and statutory law, multiple defendants reside within the State of New Mexico, and all Plaintiffs reside within the State of New Mexico.

15.     Venue is proper in the District Court for San Miguel County, New Mexico because Plaintiff Arthur Bustos is a resident of San Miguel County.  NSMA 1978 § 38-3-1 (1986).

16.     Pursuant to 49 U.S.C. § 20106 this case was appropriately brought in state court rather than federal court.  Plaintiffs reserve the right to amend this Complaint as needed to further establish why this case was appropriately brought in the District Court of San Miguel County, New Mexico. All allegations herein related to Defendant Railroad are based upon and should be interpreted to state causes of action seeking damages under state law for personal injury or property damage, based upon one or more of the following:

    a.  Defendant Railroad has failed to comply with the Federal standard of care established by a regulations or orders issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of 49 U.S.C. Section 20106;

    b.  Defendant Railroad has failed to comply with its own plans, rules, or standards that

4

defendant railroad created pursuant to a regulation or order issued by either of the Secretaries; or

c.   Defendant Railroad has failed to comply with State laws, regulations, and orders that are not incompatible with subsection (a)(2) of 49 U.S.C. Section 20106.

17.     All allegations set forth in this Complaint are based upon information and belief.

18.     All allegations set forth in each of the paragraphs in this Complaint are incorporated by reference into each of the other sections and paragraphs contained in this Complaint, as if fully set forth therein.

## III. FACTS AND ALLEGATIONS

19.     On July 9, 2016, at approximately 5:51 pm, Delfina Chairez was driving a Chevrolet pick-up truck westbound on Lupton Road near Dexter, Chaves County, New Mexico.

20.     As Delfina's truck was traveling westbound on Lupton Road, she encountered a railroad-highway grade crossing, which is identified as United States DOT Grade Crossing No. 019917C (hereinafter "Lupton Road Crossing" or "the Crossing").

21.     The Lupton Road Crossing is a dangerous, complex and unguarded crossing.  The Crossing is public with one mainline railroad track running through the road in a north and south direction.  Lupton Road is a two-lane gravel road but narrows significantly to a one-lane road for motorists attempting to traverse the Lupton Road Crossing.   The railroad track is owned, operated, and maintained by Defendant Railroad.

22.     The crossing is completely unprotected by any active warning devices, such as lights and gates.  The unprotected Lupton Road Crossing is only marked with crossbucks and a yield sign.

23.     At all material times hereto, as a motorist approached the Lupton Road Crossing from the west, their view in the northwest and southwest quadrants of the crossing was blocked by vegetation.

5

24.     At about the same as Delfina's truck was approaching the Lupton Road Crossing, a Defendant Railroad freight train was traveling in a northbound direction at a high rate of speed, over 40 mph.  As Defendant Railroad's freight train was approaching Lupton Road Crossing, it never slowed or blew its train horn.

25.     The Defendant Railroad's freight train was being operated by Rojelio Lopez as the locomotive engineer (the "train crew").  The conductor, was apparently not in the operating locomotive, but should have been to provide a proper lookout, blow the horn, and place the train in emergency prior to this Collision.

26.     The Defendant Railroad freight train struck the passenger's side of Delifina's truck (the "Collision").  The Collision was catastrophic resulting in the death of Delfina.

### IV. CAUSES OF ACTION

### COUNT 1 — Negligence and Fault of All Defendants

27.     Defendants have a duty to exercise reasonable care to avoid injuring or killing members of the public.  In this case Defendants breached their duty by failing to exercise reasonable care.  The public has come to rely upon the following three basic components as essential to railroad crossing safety: a) reasonable and timely audible warning of an approaching train, b) reasonable and timely visual warning of an approaching train, and c) a safe place to cross the tracks.  Defendants have actively worked to instill these fundamental beliefs into the motoring public.  In this case none of these three basic components were provided to the driver prior to the Collision.

28.     Defendants have a duty to exercise reasonable care to avoid injuring or killing members of the public.  In this case, Defendants breached their duty by failing to exercise reasonable care.  As a direct proximate result of Defendants' breach of this duty, Plaintiff suffered damages, as hereafter alleged.  All acts or omissions of Defendants constitute

6

negligence, gross negligence, willful and wanton conduct, recklessness, intentional conduct, and demonstrate a reckless and intentional disregard for the safety of the motoring public.

29.     Defendant Railroad has a duty to exercise reasonable care in the operation of its trains so as to avoid injuring or killing members of the public.  In this case, Defendant Railroad breached its duty by the failure to exercise reasonable care in the operation of trains over this crossing, failure to properly maintain the crossing environment and failure to provide adequate warning of the approaching train.

**COUNT 2 — INADEQUATE AUDIBLE WARNING**
**(Defendant Railroad and Train Crew)**

30.     The Collision described in this Complaint is caused by negligence, negligence *per se*, and willful and wanton conduct of the Defendant Railroad and its train crew:

a. In failing to give a reasonable and timely audible warning of the train's approach;

b. In failing to ensure the horn on the locomotive involved in the Collision complies with the audibility requirements of 49 C.F.R. § 229.129;

c. In failing to give a reasonable and timely warning of the train's approach by failing to give a proper audible warning;

d. In failing to provide the driver sufficient audible warning of the train's approach prior to this Collision;

e. In failing to ensure that the train horn was properly sounded to warn of the train's approach to the Lupton Road Crossing, to be "properly sounded" the horn must not only be loud enough, it must be blown in the correct sequence and for a sufficient duration;

f. In failing to use an emergency horn sequence;

g. In failing to advise or instruct its employees about the deficiencies in train mounted audible warning systems, the safety issues caused by those problems, and the proper horn activation.  Defendant Railroad has known the inherent problems with this type of train mounted audible warning systems for over 25 years and done nothing to resolve those problems or otherwise compensate for the safety deficiencies caused by those problems;

h. In failing to investigate or punish horn violations, monitor for insufficient horn

activations or otherwise attempt to accurately document such violations;

31.     Defendant Railroad has knowledge that its crews do not properly sound the horn consistently, but has chosen not to investigate or punish horn violations, monitor for insufficient horn activation or otherwise attempt to accurately document these violations.  Instead, Defendant Railroad has intentionally misrepresented the extent of the problem by publishing false and misleading information concerning the nature and extent of the problem.  As a result, its train crews are aware that the railroad condones horn violations.   It is the routine practice of Defendant Railroad to ignore violations of horn rules at grade crossings.   Accordingly, Defendant Railroad breached its duties.

32.     The investigation of this Collision has revealed no evidence that the driver of the motor vehicle was provided an adequate audible warning from the train prior to the Collision. The driver was physically unable to hear the train horn in sufficient time to react and avoid the Collision, and no fault should be assessed to the driver for not hearing and responding to such an inaudible warning.

### COUNT 3 — INADEQUATE VISUAL WARNING
### (Defendant Railroad and Train Crew)

33.     Defendant Railroad has a statutory duty under New Mexico law, New Mexico Code § 327F.27 to maintain its right-of-way to keep it free from obstruction to the view of the motoring public.

34.     Defendant Railroad has the common law duty to use ordinary care to maintain crossings over all public highways in such a manner that it shall be safe for travelers. This common law duty requires Defendant Railroad to clear visibility obstructions to provide motorists with an adequate view down the track in both directions, and it extends beyond the distances established by statute.

35.    Defendant Railroad's own standards and the railroad industry standards create a common law duty for the Defendant Railroad to clear visibility obstructions to provide motorists with an adequate view down the track in both directions, and such duty extends beyond the distances established by statute.   This includes clearing all vegetation from fence lines and all trees overhanging the right of way.

36.    New Mexico statutory law does not preempt the Defendant Railroad's common law duties to clear visibility obstructions beyond the distances established by statute.

37.    The Collision described in this Complaint is caused by negligence, negligence *per se*, and willful and wanton conduct negligence of the Defendant Railroad and the train crew:

   a.  In failing to give reasonable and timely visual warning of the train's approach.

   b.  In failing to provide the illumination of headlights and auxiliary lights in compliance with 49 C.F.R. § 229.125 and failing to provide unimpaired sight distances for motorists to see those headlights and auxiliary lights.

   c.  In failing to clear visibility obstructions from its own right-of-way.

   d.  In failing to clear vegetation pursuant to Defendant Railroad's own standards.

   e.  In failing to "flag" or direct traffic safely over this crossing as required by federal regulations and Defendant Railroad's internal rules created pursuant to such regulations.

   f.  In failing take reasonable steps to provide motorists with adequate sight triangles or to warn of their inadequacy, including but not limited to failing to report the inadequate sight triangles and/or failing to work with local road authorities to address this condition.

   g.  In failing to properly train its employees to recognize safety hazards caused by visibility obstructions and in condoning its employees' failures to report such hazards.

   h.  In failing to report the obvious safety hazards at this Crossing.

   i.  In failing to correct the safety hazards, denying the extent of the problem, and refusing to acknowledge its responsibilities for maintaining unimpaired sight distances.

### COUNT 4 — TRAIN OPERATIONS
### (Defendant Railroad and Train Crew)

38.     The Collision described in this Complaint is caused by negligence, negligence *per se*, and willful and wanton conduct negligence of the Defendant Railroad and its train crew:

   a.  In failing to keep a proper lookout prior to the Collision;

   b.  In failing to take reasonable precautions to protect the Lupton Road Crossing before the train fully occupied the crossing;

   c.  In failing to travel at a speed that allowed the train to stop in time to avoid the Collision;

   d.  In failing to slow or stop the train to avoid "a specific, individual hazard" at the Lupton Road Crossing prior to the Collision and/or failing to approach the Lupton Road Crossing prepared to stop due to "an essentially local safety hazard;"

   e.  In failing to instruct its train crews on the appropriate circumstances under which they should be prepared to brake, slow, or stop the train for safety hazards at railroad crossings;

   f.  In failing to be prepared to brake, slow, or stop for motorists at the Lupton Road Crossing.

   g.  By condoning its employees' failures to modify train operations to account for hazards at railroad crossings and by adopting a routine practice of ignoring hazards to the motoring public;

   h.  In failing to instruct its crew to immediately apply the emergency brakes and sound the emergency horn sequence when a specific, individual hazard is recognized;

39.     Plaintiff is not making any claim for excessive speed based on "a specific individual hazard" or "an essentially local safety hazard." The claims based on "a specific individual hazard" and "an essentially local safety hazard" should not be interpreted as anything but the failure to, or the failure to be prepared to, slow the train, apply the brakes, or stop the train.

40.     Defendant Railroad has also condoned its employees' failure to modify train operations to account for hazards at railroad crossings and has adopted a routine practice of

ignoring hazards to the motoring public. This intentional indifference to the safety of Plaintiff

and the motoring public was one of the contributing factors that caused this Collision.

### COUNT 5 — FAILURE TO INSPECT AND REPAIR UNSAFE CROSSING
### (Defendant Railroad)

41.     Regulations specify many duties Defendant Railroad has in connection with the

crossing, track and surrounding appurtenances. Those duties include, but are not limited to, the

following:

a.  The duty to inspect the crossing, track and surrounding appurtenances pursuant to 49
    C.F.R. §§ 213.233, 213.237, 213.233 and associated sections;

b.  The duty to designate qualified persons to inspect track for defects pursuant to 49
    C.F.R. § 213.7(b);

c.  The duty to immediately prepare and maintain a record of each inspection of its track
    to specify the track inspected, date of inspection, location and nature of any defects
    and identifying the appropriate remediation for such defects all pursuant to 49 C.F.R.
    § 213.241 and its own rules;

d.  The duty to immediately bring its track into compliance with track safety standards or
    halt operations over that track pursuant to 49 C.F.R. § 213.5.

42.     The Collision described in this Complaint is caused by negligence, negligence *per*

*se*, and willful and wanton conduct negligence of Defendant Railroad:

a.  In failing to properly inspect and maintain the Lupton Road Crossing;

b.  In failing to properly identify, document, report, or repair the hazardous track and
    crossing conditions described herein;

c.  In routinely ignoring the hazardous conditions posed by the Lupton Road Crossing;

d.  In allowing these hazardous conditions to exist in direct violations of the code of
    Federal Regulations and Defendant Railroad's rules created pursuant to such
    regulations.

43.     The hazardous track and crossing conditions described herein were not properly

identified, documented, reported or repaired by Defendant Railroad and its employees. Instead

these hazardous conditions were allowed to exist as a direct violation of the code of Federal

11

Regulations and the Defendant Railroad's own rules created pursuant to such regulations. Defendant Railroad knew or should have known that the existence of these hazardous conditions created an unsafe Crossing in violation of these rules and regulations.

44.    Many factors have combined to render this crossing unsafe for motorists. This combination of track conditions required remedial action to allow for safe operations over this Crossing by motorists and railroad traffic. If Defendant Railroad would have properly conducted track inspections at this Crossing, the hazardous conditions at this crossing would have been identified and remedial action taken long before this accident, thereby preventing this collision.

## COUNT 6 — SPECIFIC UNSAFE CROSSING CONDITIONS
### (Defendant Railroad and Train Crew)

45.    The Collision described in this Complaint is caused by negligence, negligence *per se*, and willful and wanton conduct negligence of the Defendant Railroad and its train crew, which allowed many factors, including the following, to exist and combine to render this Crossing unsafe for motorists:

   a.   Vegetation in the northwest and southwest quadrant of the Crossing contributed to the overall complexity of this crossing.

   b.   The vertical alignment of the Crossing approach is one of the characteristics of the Crossing contributing to the overall complexity of the crossing. Maintenance activities at the Crossing should not be allowed to build up or lower the Crossing surface from the same level plane of the intersecting roadway, thereby creating an unacceptable approach grade. The approaches to this Crossing were at an inappropriate incline to the Crossing surface thus complicating the driving task for motorists using this Crossing.

   c.   The maintenance of the Crossing surface and the poor condition of those materials is one of the characteristics of the Crossing contributing to the complexity of the driving task.

   d.   The width of the Crossing surface was so narrow that it allowed only one vehicle to traverse over the Crossing at a time. The installation and maintenance of the Crossing surface "planks" are the duty of Defendant Railroad. As a result of this narrow Crossing surface, it necessarily diverts a driver's attention to Crossing surface to ensure they do not strike oncoming vehicles or accidently drive off the narrow

12

Crossing planks and become struck on the railroad tracks.

e. The rough and unstable condition of the Crossing surface, resulting from poor maintenance, was one of the characteristics of the Crossing contributing to the complexity of the driving task.

46.   Although there are many problems that are caused by the complex crossing characteristics of this Crossing, Plaintiff is not making any claim based upon anything inappropriate concerning the design or construction of the railroad track.   These allegations assert that this Crossing was not properly maintained and should not be interpreted as anything but improper maintenance issues.

### COUNT 7 — FAILURE TO REPORT UNSAFE CONDITIONS
### (Defendant Railroad and Train Crew)

47.   The Collision described in this Complaint is caused by negligence, negligence *per se*, and willful and wanton conduct negligence of the Defendant Railroad:

a. In failing to correct or accommodate for the hazardous characteristics and conditions at the Lupton Road Crossing;

b. In condoning its employee's failure to report these unsafe crossing conditions and characteristics;

c. In failing to require its employees to report unsafe conditions at the Lupton Road Crossing, in violation of Defendant Railroad's Operating Rules and federal regulations which require Defendant Railroad to instruct its employees to comply with its operating rules.

48.   Defendant Railroad has actual or constructive knowledge that all of the above mentioned characteristics and conditions make crossings more complex and more hazardous for motorists.   Instead of correcting or accommodating for these hazardous characteristics and conditions, Defendant Railroad has elected to ignore their existence.   As a result, Defendant Railroad's employees are aware that the railroad does not want them to report hazardous conditions that are known to make crossings like this unsafe.   It is the routine practice of Defendant Railroad to condone its employee's failure to report these unsafe crossing

13

characteristics and conditions.  Defendant Railroad knew, or should have known, that this failure

to report and address unsafe crossing characteristics and conditions, would result in unnecessary

loss of life and injuries.

**COUNT 8 — SIGNS, SIGNALS AND MARKINGS**
**(Defendant Railroad)**

49.     The conditions and characteristics at this Crossing were such that they rendered

this crossing "extra-hazardous," "ultra-hazardous," and "unusually dangerous."

50.     The Collision described in this Complaint is caused by negligence, negligence *per*

*se*, and willful and wanton conduct negligence of the Defendant Railroad:

a.  In failing to share necessary information, failing to establish an open line of
communication, and failing to engage in any effort to evaluate crossing conditions
and characteristics at this Crossing with state and local road authorities;

b.  In failing to comply with MUTCD standards;

c.  In failing to install and/or maintain adequate warning devices at this Crossing,
including automatic gates with flashing light signals;

d.  In failing to take additional measures to protect those using the Crossing, including
but not limited to installing automatic gates with flashing light signals;

e.  In failing to provide warning devices required pursuant to 23 C.F.R. §
646.214(b)(3)(i), including "automatic gates with flashing light signals."

f.  In failing to promote the usage of lights and gates or other cost-effective active
warning devices and in engaging in conduct that has resulted in fewer installations of
lights and gates.  Even though Defendant Railroad knows that lights and gates are
affordable, cost-effective guarding devices that have proven to be at least 90%
effective;

g.  By refusing to supplement the federal funding of active warning devices with any
meaningful safety program;

h.  By refusing to install active warning devices paid for with federal funding unless the
State of New Mexico or its citizens pay for the maintenance of those active warning
devices;

i.  By delaying the installation of lights and gates, engaging in conduct that
unnecessarily increases the costs of these proven safety devices, and diverting funds

14

that should have been used to install these devices;

j. By refusing to promote the usage of other low cost active warning devices for crossings, such as the Lupton Road Crossing.

## COUNT 9 — TRAINING, INSTRUCTION AND MANAGEMENT
### (Defendant Railroad)

51.     The Collision described in this Complaint is caused by negligence, negligence *per se*, and willful and wanton conduct negligence of the Defendant Railroad:

a. In failing to appropriately instruct, supervise and monitor its employees as required by 49 C.F.R. §§ 217.1 and 218.11;

b. In intentionally instructing its crews and other employees that there is nothing the railroad can do to prevent collisions or reduce risks to the public despite the knowledge that such an assertion is false;

c. In refusing to implement any system safety program for crossing safety;

d. In refusing to utilize a systems approach to provide a comprehensive method for addressing safety issues at crossings;

e. In intentionally choosing to ignore hazards that would be readily identified in a system safety analysis;

f. In intentionally choosing not to train its personnel to identify and correct unsafe conditions for the purpose of saving money on maintenance and capital improvements.

## COUNT 10 — INTENTIONAL DISREGARD FOR PUBLIC SAFETY
### (Defendant Railroad)

52.     Defendant Railroad's customs, policies, and conduct in all of the aforementioned allegations were willful and wanton, and demonstrated an intentional and deliberate disregard for the safety of Delfina Chairez, Deceased, and the motoring public.   Defendant Railroad has intentionally elected to disregard legal duties owed to the motoring public.

53.     Defendant Railroad knew and or had information from which it should have known that each separate aspect of its conduct, as described herein, created an unreasonable risk of substantial and intolerable injury to the motoring public, involved a high probability that harm

would result, and resulted in substantial certainty that severe injury would occur; such conduct, in light of this knowledge, shows complete indifference to the safety of Delfina Chairez, Deceased, and the motoring public.

54.     Defendant Railroad's customs, policies, and conduct in all of the aforementioned allegations establish that Defendant Railroad deliberately proceeded to act in conscious or reckless disregard of the safety of the motoring public or acted with indifference to the safety of the motoring public, and such conduct shows conscious disregard for the safety of Delfina Chairez, Deceased, and the motoring public.

55.     Defendant Railroad has demonstrated a pattern of willful and wanton conduct by intentionally failing to enforce its own policies and procedures as well as federal and state laws providing for the safe operation of trains.  This pattern of conduct has condoned and ratified the conduct of its employees and agents to disregard duties owed to the motoring public.

56.     Defendant Railroad has made a deliberate decision that it will be cheaper to pay compensatory damages for claims resulting from car-train collisions than to properly maintain its crossing, upgrade its crossings, and properly train its employees on issues involving crossing safety.  Defendant Railroad's conduct as set forth herein constitutes a deliberate disregard for the rights and safety of Delfina Chairez, Deceased, and the motoring public.

## V. DAMAGES AND PRAYER FOR RELIEF

57.     Plaintiff reserves the right to amend their Complaint in this matter, as permitted by applicable New Mexico law.

58.     Plaintiffs' wrongful death claim is brought pursuant to New Mexico's Wrongful Death statute.

59.     The acts and/or omissions of Defendant Railroad, and each of them, singularly or in combination, proximately caused the death of Delfina Chairez ("Decedent" or "Deceased"),

16

and her pain and suffering.

60.     As such, the Personal Representative and persons authorized by statute to collect

on behalf of the Decedent are entitled to all damages recoverable pursuant to the New Mexico

Wrongful Death Act, § 41-2-1, et seq. NMSA 1978 (2000 Supp.).

61.     Plaintiffs are entitled to damages under NMRA UJI 13-830 for:

   a.   The reasonable expense of necessary medical care and treatment and
        funeral and burial;
   b.   The pain and suffering experienced by the Deceased between the time of
        injury and death;
   c.   the lost earnings, the lost earning capacity, and the value of the lost
        household services of the Deceased;
   d.   The value of the Deceased's life apart from her earning capacity;
   e.   The aggravating circumstances attending the wrongful act, neglect, or
        default;
   f.   The emotional distress to the children of Decedent caused by the loss of
        society, guidance, and familial relations enjoyed with the Deceased; and
   g.   The loss to beneficiaries of other expected benefits that have a monetary
        value.

62.     The children of the Deceased being Benito Chairez, Sergio Chairez, and Isaac

Chairez, have been deprived of companionship, love, society, comfort, and support and other

aspects of the relationship they had with their mother as a result of her untimely death, and thus,

are entitled to loss of consortium damages against Defendant Railroad, and each of them.

63.     Additionally, Plaintiffs are entitled to recover punitive damages in such amounts

allowed by law and as determined by the fact finders in this case, as well as any and all other

damages or other relief available under New Mexico law.

WHEREFORE, Plaintiff prays that they each be awarded judgment, jointly and severally

against Defendants for compensatory damages for the injuries and damages described above in

an amount to be determined by the jury which, in any event, shall be and is in excess of the

amount required for Federal Court Jurisdiction in Diversity of Citizenship Cases, that Plaintiff

further be awarded damages for their loss of consortium claims, for punitive damages,

reasonable prejudgment and post judgment interest, costs and all other relief which the Court deems just and proper.

Respectfully submitted,

JONES WITT LAW FIRM
207 N Washington Ave,
Roswell, NM 88201
Telephone:    (575) 622-6722
Email:        doug@joneswittlawfirm.com

FARGASON, BOOTH, ST. CLAIR,
RICHARDS & WILKINS, LLP
4716 Fourth Street, Suttie 200
Lubbock, TX 79416
P.O. Box 5950
Lubbock, TX 79408-5950
Telephone:    (806) 744-1100
Facsimile:    (806) 744-1170
Email:        damon@lbklawyers.com

By: _____
     Damon Richards

And

Robert L. Pottroff, KS #10220
*(pro hac vice pending)*
Nathan L. Karlin, KS #26392
*(pro hac vice pending)*
**POTTROFF & KARLIN, L.L.C.**
320 Sunset Avenue
Manhattan, Kansas 66502
Phone: 785-539-5656
Fax:    785-539-1750
Email: bob@pottroff.com
       nathan@pottroff.com

**ATTORNEYS FOR PLAINTIFFS**

STATE OF NEW MEXICO
COUNTY OF SAN MIGUEL
~~FIFTH~~ JUDICIAL DISTRICT
FOURTH
ARTHUR BUSTOS, as Personal Representative
of the Estate of DELFINA CHAIREZ, Deceased;
BENITO CHAIREZ, SERGIO CHAIREZ, and
ISAAC CHAIREZ, each individually as the Survivors
and Legal Heirs to the Estate of DELFINA CHAIREZ,

      Plaintiffs,

v.                            Cause No.    D-412-CV-2018-00007

SOUTHWESTERN RAILROAD, INC.;
SOUTHWESTERN SHORTLINE RAILROAD COMPANY,
SOUTHWESTERN RAILCAR SERVICES, LLC,
THE WESTERN GROUP LC; and ROJELIO LOPEZ,

      Defendants.

## **DEMAND FOR JURY TRIAL**

      COME NOW Plaintiffs, by and through his undersigned counsel, and pursuant to the

terms and conditions of Rule 38 of the New Mexico Rules of Civil Procedure requests a trial by a

twelve (12) member jury and hereby tenders their jury fee.

                        Respectfully submitted,

                        JONES WITT LAW FIRM
                        207 N Washington Ave,
                        Roswell, NM 88201
                        Telephone:    (575) 622-6722
                        Email:        doug@joneswittlawfirm.com

                        FARGASON, BOOTH, ST. CLAIR,
                        RICHARDS & WILKINS, LLP
                        4716 Fourth Street, Suttie 200
                        Lubbock, TX 79416
                        P.O. Box 5950
                        Lubbock, TX 79408-5950
                        Telephone:   (806) 744-1100
                        Facsimile:    (806) 744-1170
                        Email:        damon@lbklawyers.com

1

By: _____
      Damon Richards

And

Robert L. Pottroff, KS #10220
*(pro hac vice pending)*
Nathan L. Karlin, KS #26392
*(pro hac vice pending)*
**POTTROFF & KARLIN, L.L.C.**
320 Sunset Avenue
Manhattan, Kansas 66502
Phone: 785-539-5656
Fax:    785-539-1750
Email: bob@pottroff.com
          nathan@pottroff.com

**ATTORNEYS FOR PLAINTIFFS**